## Sloan's Estate. Fenner's Appeal.

*Decedents' estates—Allowance of contingent fee to counsel—Contract of next of kin as to counsel fee.*

When a contingent fee of fifty per cent of the amount of a claim is agreed to be paid to an attorney for collection, the contract implies either that the claim is difficult of proof, or that if reduced to judgment it will be difficult of collection; and such a contract involves at least ordinary diligence on the part of the attorney in order to entitle him to such a fee.

While such a contract made by the mother and sole next of kin of a decedent may be binding upon her, it does not bind her descendants, nor

the estate toward which she stood in no other relation than that of dis-
tributee.

Argued April 4, 1894. Appeal, No. 290, Jan. T., 1894, by
George Fenner, claimant, from decree of O. C. Phila. Co., dis-
missing exceptions to adjudication in estate of Joseph Sloan,
deceased. Before STERRETT, C. J., GREEN, WILLIAMS, MITCH-
ELL and DEAN, JJ. Affirmed.

Exceptions to adjudication of administratrix's account.

At the audit, before HANNA, P. J., George Fenner, a mem-
ber of the bar, presented a claim for $570.20, being fifty per
cent of a sum collected for the estate. The auditing judge
found the facts as follows:

" Joseph Sloan, the decedent, had a claim to recover a cer-
tain debt due him by one Robert Lynch, and after Sloan's
death, his mother, Mary Sloan, employed Mr. Fenner to collect
the claim, and agreed to pay him for his services one half of
the amount he collected. In December, 1871, Mr. Fenner is-
sued a summons against Robert Lynch, making Mary Ann
Sloan, administratrix of Joseph Sloan, plaintiff, and on Jan. 22,
1872, recovered judgment against Lynch for $708.40. The
next day he issued an execution, which was returned by the
sheriff nulla bona. Mr. Fenner subsequently revived the judg-
ment from time to time and until August, 1892. About that
time the death of the plaintiff having occurred, letters of ad-
ministration were taken out by the accountant, and other coun-
sel were employed by her and associated with Mr. Fenner.
The additional counsel issued an execution on Oct. 26, 1892,
upon the revived judgment and levied upon real estate of the
defendant, and the same was condemned. Subsequently the
plaintiff and defendant compromised the claim for $1,140.40,
and the judgment was satisfied."

The auditing judge allowed claimant $50.00, and costs paid
by him.

Exceptions to refusal of claim in full were dismissed by the
court, in the following opinion, by ASHMAN, J.:

" When a contingent fee of fifty per cent of the amount of
a claim is agreed to be paid, the contract would seem to imply
either that the claim is difficult of proof, or that, if reduced to
judgment, it will be difficult of collection. Moreover, if the

promise of so extraordinary a compensation was not intended as a stimulus, and its acceptance was not a pledge to more than ordinary effort—a proposition which in this instance need not be laid down—it at least involved, on the part of counsel, the putting forth of ordinary diligence. A careful review of the evidence satisfies us that the claim in this case was not of the character known as desperate ; the judgment was obtained without difficulty, and its payment might have been compelled in a reasonable time. Without at all reflecting upon the integrity of the claimant, who is a most reputable member of the bar, it is very evident that he allowed himself to be handicapped with the idea that the demand was practically hopeless, and for that reason contented himself with securing judgment, and subsequently reviving it, and with issuing an execution which turned out to be fruitless, when a reasonable search would have shown him that the defendant had property amply sufficient to meet the debt.

" This, however, is not the whole of the case. The debt sued upon was due to the decedent in his lifetime. After his death his mother, who was his sole next of kin, engaged the claimant as counsel, and agreed to pay him the fee which is now in controversy. The claimant thereupon commenced an action in her name as administratrix of decedent's estate, when, in point of fact, no letters had issued to her or to any one else. He also made an error in the name of the defendant, which turned out to be more serious than the former, because by it the defendant was enabled to convey, beyond the reach of the plaintiff, certain real estate, which, but for the misnomer, would have been bound by the judgment. It may be said, although nothing of the kind appeared in proof, that the claimant was probably led into these errors by his client. But in some matters a lawyer ought not to permit himself to be misled. He knows that a large percentage of every community, comprising by far the largest class, know nothing of the settlement and devolution of estates, and are more or less careless in designating persons by their full proper names. If a client comes from this class with a claim, any part of which is founded upon a record, the least which counsel can do is to examine the record. In the present case the client was a woman in humble circumstances, who, in all human probability, could not distinguish the func-

tions of an administrator from those of a deputy escheator.  If the counsel had looked at the books of the register, he would have found that the mother of the decedent was not his administratrix, and if he had looked at the directory, he would have found that the name of the defendant, which she had given, was not the full name.  He brought suit in 1871, obtained judgment within three weeks, and in 1892 was as far from realizing the money as ever.  In that year other counsel, at the request of the accountant, were associated with the claimant.  They took out letters of administration on the estate of the decedent, suggested on the record the death of the mother, which had taken place some months before, issued execution, and effected a favorable compromise.  In all of these acts the claimant took no part. He now claims from the estate one half of the sum as his contingent fee.  We do not reject the demand on the ground that the contract under which it was made was executed by a person who had no power to bind the estate.  The estate has reaped the ultimate benefit of the suit.  But we do think that a contract of this sort was not intended to last forever.  If it bound the mother during her lifetime, it did not bind her descendants to the end of time.  It did not bind the estate, toward which the mother, who was named as plaintiff, stood in no other relation than that of distributee.  The only possible basis for its allowance would be, that the accountant recognized it as a subsisting obligation, by asking leave of the claimant to associate other counsel with him in the prosecution of the suit.  It was not pretended to bring home to her notice that the contract was for a fee to claimant at a rate which would wipe out half of the proceeds ; and which, if it was extended to the pay of his associates, would leave nothing for the distributees.  She had apparently no source of information beyond the docket entries of the suit.  These showed the appearance of the claimant as the plaintiff's attorney of record, but they could suggest to her only that he would be entitled to the ordinary compensation which obtains between counsel and client, and which is measured by the reasonable value of the professional service.  For the reasons which have been dwelt on, we think that such a compensation is all that the exceptant can properly claim.  The auditing judge acted upon this theory, and, in addition to the costs, which the claimant actually paid, awarded him a counsel

fee of fifty dollars. We cannot say this does not meet the requirements of the case."

*Errors assigned* were dismissal of exceptions, quoting them.

*Alex. Simpson, Jr.*, for appellant, cited : Guilinger v. Zahniser, 5 Cent. R. 303 ; Hagemann's Est., 5 Pa. C. C. R. 576 ; Whart. Neg. § 752 ; Reese v. Clark, 146 Pa. 465 ; McKelvy's Ap., 108 Pa. 615.

*W. Egbert Mitchell, William W. Montgomery* with him, for appellee, cited : Dickerson v. Pyle, 4 Phila. 259 ; Perry v. Dicken, 105 Pa. 83 ; Chester Co. v. Barber, 97 Pa. 455 ; Wood v. Reynolds, 7 W. & S. 406 ; Hutchinson's Ap., 92 Pa. 186.

PER CURIAM, April 23, 1894 :

All that is necessary to be said in vindication of the decree complained of will be found in the opinion of the learned judge of the orphans' court dismissing exceptions to the report of the auditing judge. For reasons given by him the decree should be affirmed.

Decree affirmed on the opinion of the court below, and appeal dismissed with costs to be paid by appellant.